NioholsoN, C. J.,
delivered the opinion, of the Court.
At the Jiily Term, 1842, of the Circuit Court, Gibson county, a judgment was rendered in favor of Samuel Booth, chairman, etc., for the use of Asher Flowers, guardian, etc., again Jesse Flowers, Mary Flowers, and others, for four hundred and thirty-seven dollars and thirty-one cents. An execution issued on this judgment, tested of the July Term, 1842, and returned to the November Term, 1842, credited with seventeen dollars and twelve cents, made by the sale of property. From that time until October, 1855, this judgment remained without' any other execution having been issued. The bill in this case was filed in October, 1855, to enforce the balance on this judgment, and to have the same satisfied out of the distributive share of Jesse Flowers, in the estate of his father, Jacob Flowers. The bill is filed in the names of the heirs of Humphrey Flowers, for whose use the said judgment was rendered. Jesse Flowers had been their guardian, and the judgment was rendered for their use against Jesse Flowers and the securities on his guardian bond, of whom Asher Flowers, their guardian at the time the judgment was rendered, was one. The bill was filed against Jesse Flowers and the other distributees of Jacob Flowers, *631 but no relief is now sought against any except Jesse Flowers. The prayer of the bill is, that the share of Jesse Flowers in the estate of Jacob Flowers, be subjected to the satisfaction of the judgment.
The relief sought is resisted on several distinct grounds, which it becomes necessary to consider.
1. It is said that the judgment is void because Asher Flowers is both plaintiff and defendant. By reference to the circuit court record, it appears that the judgment was rendered in favor of the Chairman of the County Court, for the use of Asher Flowers, guardian of the minor heirs of Humphrey Flowers, against Jesse Flowers, Asher Flowers, and others, his securities. Without determining whether the judgment is void or not, as against Asher Flowers; it is well settled that the judgment may be valid as to Jesse Flowers, although it may be voidable as to Asher Flowers: Sherrell v. Goodrum, 3 Hum., 419; Winchester v. Bearden, 10 Hum., 247.
2. It is said the judgment is void because it was taken by default, and the' record does not show that process was served on Jesse Flowers, or that he made any appearance. We find in the record from the circuit court none of the papers in the cause, except what appear on the minutes of the court. The clerk in his certificate does not state that it is a perfect transcript of all the papers in the cause, but only a transcript of the proceedings on the record book. In the absence of a perfect record, we should hesitate to hold that the *632 judgment is void. But, we are relieved of any difficulty on this point by an examination of tbe answer of Jesse Flowers to tbe original bill, and of bis allegations in bis cross-bill. In bis answer be says, “ He supposes it to be true, tbat be or bis securities were sued in tbe circuit court, but be is not sure tbat be was actually a party to said suit.” He says further, “tbat said Asber being interested as a security, it was not expected or designed tbat respondent should defend tbe suit; but be was to take judgment for tbe amount justly due.” In bis cross-bill, be says, “be was informed by said Asber, tbat tbe suit was brought for, which it was really done, (a small balance), and tbat be Asber would attend to tbe matter, and have it settled correctly.” He is clearly estopped by these statements from insisting tbat be bad no notice of tbe suit.
3. It is next insisted tbat ,the judgment was procured by tbe fraud of Asber Flowers, and tbat be was indebted but little, if anything, at tbe time tbe judgment was rendered. Tbe cross-bill was filed to make this defense, and upon having tbe judgment set aside to have an account taken of bis management of tbe trust funds.
He alleges, tbat be was entirely without' education, could neither read nor write, and knew little of business. Tbe proof more than sustains these allegations, as to bis utter unfitness and disqualification for business; and defendants in their answer to bis cross-bill say, tbat if be was from any cause prevented from making defense to said *633 suit, it was from Ms own drunkenness and inattention.
He alleges, that after Asker Flowers, wko was one of Ms securities, was appointed Ms successor, lie made a settlement with the County Court in which he was assisted by' Asher, and commenced paying up to Asher, before the suit was commenced. That Asher informed him that the suit was brought for a small balance, and that he would attend, to the matter, and have it settled correctly. That as he had confidence in said Asher, and knowing that be was interested, he trusted to .his promises, and did not defend the suit. He says, said Asher told him when the suit would come on, but he found out afterwards that the judgment was taken at the term before the one at which he told him it would come on. He says, that by various payments before and after the judgment, he reduced the amount due to a small sum, or entirely paid it. He says, that at the time the judgment was rendered, he did not owe as much as four hundred and thirty-seven dollars, by several hundred dollars, nearly or quite all of which has since been paid. It is manifest that, if these allegations are true, that ■ the judgment was procured by fraud, and that complainant in the cross-bill is entitled to relief both on the ground of fraud, and of payment of the debt. The defendants, without having any personal knowledge of the facts, strongly deny the allegations, on their information and belief. It will require a careful exam *634 ination of tbe facts to determine the issue thus presented. Our first inquiry is, whether the judgment rendered was unjust as to its amount. Armenia N. Robinson proves that she heard Asher Flowers say, the judgment was gotten because Jesse failed to attend to it, and that it was not just. He said further, that Jesse had about paid him up what he owed him. She never heard Asher say, he was to attend to the suit. John F. Thomas proves, that shortly after the trial in the circuit court, he heard Asher Flowers say that Jesse was entitled to further credits than he got on the trial; that Jesse was not present at the trial, and had no one to represent him.
It appears from the circuit court record that the judgment by default was taken at the March Term, 1842, and the verdict on writ of inquiry rendered at July Term, 1842.
It appears by the county court record that Asher Flowers was appointed guardian of the minor heirs of Humphrey Flowers on the 4th of November, 1839, and that Jesse Flowers, their former guardian, had in his hands at that time $761 belonging to his wards. At the March Term, 1841, the clerk reported a settlement with Jesse Flowers, from which it appears that at that time Jesse Flowers was in arrears $543.43. At the September Term, 1841, Asher Flowers reported to the court that he had received of Jesse Flowers $239.27. At the October Term, 1842, he reported that he had received from Jesse Flowers the *635 additional sum of $107.75, which, was received on the 1st March, 1842. It appears conclusively from these facts, furnished by the county court record, that at the date of the circuit court judgment, July Term, 1842, Jesse Flowers was in arrears with Asher Flowers, his successor, in the sum of about $196.41, instead of $437.31, the amount of the judgment.
It is proved by J. F. Thomas that on the 20th of March, 1841, Jesse Flowers transferred and assigned 'to Asher Flowers, notes amounting to $399.63, as a payment on his liability as guardian. This payment was made a few days after the settlement with the county court, when the amount against him was found .to be $543.43. If we assume that the credits already referred to of $239.27, and $107.75, were proceeds of the notes so assigned, there still remains $52 of these notes unaccounted for by Asher Flowers. If these notes assigned were all available, this would reduce 'Jesse’s indebtedness at the time of the judgment to $144.
It is proved by J. H. Eobinson and others, that in 1841 Asher Flowers got two horses from Eobin-son and his brother for $140, for which Jesse Flowers paid them, and that the amount was to go in the way of Jesse’s indebtedness as guardian. The exact date of this transaction is not shown, but it was in 1841. If before the judgment, then nothing was then due from Jesse; if after, then the judgment should have been for $144, instead *636 of $437.31, and tbe amount really due was paid soon after tbe judgment was rendered. It further appears by tbe circuit court record that execution issued on tbe judgment from tbe July Term, 1842, and was levied September 2, 1842, on two horses, fifty bead of bogs, one yoke of oxen, one ox cart, one cow and calf, two large' steers, three heifers, three plows, one pair of gear, and one scythe and cradle, tbe property of Mary Flowers, one of tbe securities, and tbe sheriff returned, October 17th, 1842, received by tbe sale of 'the above property, $17.12, which was just about sufficient to pay tbe costs. From that time down to tbe filing of this bill, in 1856, no evidence is furnished that Asher Flowers, or any one else, made any attempt to enforce the judgment. But it does appear that after the filing of the bill, to wit, on the 22nd of July, 1856, the complainant in the original bill had an alias execution issued and levied on a tract of land of Jesse Flowers, containing 200 acres, which was sold on the 17th of March, 1856, and purchased by complainants at $40.
These facts in proof fully establish the allegations in the cross bill, that but little, if anything, was due from Jesse Flowers when the judgment was rendered, and that any balance then due was after-wards paid, and that the judgment was grossly and palpably unjust. But it is insisted for defendants in the cross bill that if the judgment was unjust, that it was not procured by the fraud of Asher Flowers, but that it was the result of the gross *637 negligence or drunkenness of Jesse Flowers. It is true that Jesse Flowers fails to prove Ms allegations, that Asher promised to attend to the suit, and that he need not give it his attention; that he would see that the matter was correctly' settled. But we cannot overlook the fact that Asher Flowers was the real active plaintiff in the suit; that it was his business to furnish the proof which was to fix the amount of Jesse’s liability; that Jesse had, with his assistance, settled with the county court, and shown what amount was then due; that he had paid Asher a few days afterwards $399 in discharge of this liability. Let it be conceded that Jesse was not present at .the trial, either from negligence or drunkenness, can it be said that there, was no dishonesty — no fraud in Asher withholding material facts in his possession, and in the absence of Jesse taking a judgment for twice or three times as much as was due. We cannot resist the conclusion, that Jesse was absent from the trial because he had confidence in Asher, and believed he would settle the matter correctly, and that he so acted upon his confidence in Asher’s assurances, and that Asher failed to. furnish the evidence of payments which Jesse from his promises expected him to furnish. But it is difficult to see any motive on the part of Asher to practice a fraud on Jesse — the withholding' from the jury in the absence of Jesse the evidence of the payment of three hundred and ninety-nine dollars in notes, was probably no intentional fraud, the notes had probably not then been collected and *638 their proceeds realized'!' Hence that payment was withheld. lie admitted soon after the judgment was rendered, that Jesse was entitled to credits which he did not get, and that he had about paid ujo the debt. Without determining that the conduct of Asher ■was absolutely- fraudulent, the facts satisfy us that he knowingly took the judgment for an amount which was not due; and that his subsequent declarations and conduct prove that he did not regard the judgment as subsisting and binding on Jesse, but that it was paid off. We have seen that the execution was levied on property, that in all probability was sufficient to pay the whole judgment; yet the sheriff only received on the sale enough to pay the costs; and for thirteen years afterwards Asher made no effort to enforce the judgment. Without relying specially on the presumption of payment from lapse of time, yet this, in connection with the proof of payment of the notes, three hundred and ninety-nine dollars, and in the two horses at one hundred and forty dollars, and the admission of Asher in 1841, that the debt was about paid off, satisfies us that when the bill was filed, there was no subsisting valid unpaid judgment, but that the same had been paid off and satisfied. We, therefore, reverse the decree of the Chancellor, dismiss the original bill at the costs of the complainant therein, and give the complainant in the eross-bill the relief prayed for, but he will pay the costs of his cross-bill for his negligence.